UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
OLIVIA POLLARD,                          :
                                         :          **OPINION AND ORDER**
                        Plaintiff,       :
                                         :             13 Civ. 4759 (ER)
            -against-                    :
                                         :
NEW YORK CITY HEALTH AND HOSPITALS       :
CORP.,                                   :
                                         :
                        Defendant.       :
------------------------------------------------------------x

Ramos, D.J.:

*Pro se* Plaintiff Olivia Pollard brings this Complaint against her employer, the New York

City Health and Hospitals Corporation ("Defendant" or "HHC"), for discrimination based on her

race and gender, and retaliation for filing discrimination complaints against Defendant.  (Doc. 2).

She alleges that Defendant's actions violated Title VII of the Civil Rights Act of 1964, New

York State Human Rights Law ("SHRL"), and New York City Human Rights Law ("CHRL").

Before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  For the reasons stated below, Defendant's motion for

summary judgment is GRANTED.

## I.    Factual Background[1]

Plaintiff is an African American woman with numerous degrees in Information Systems,

including a Ph.D. in Information Systems Management.  Def.'s 56.1 Stmt. ¶ 2, Pl. Memo. at 19.[2]

---

[1] The facts are taken from Defendant's 56.1 Statement ("Def. 56.1 Stmt.") (Doc. 48); the Amended Complaint
("Compl.") (Doc. 13); and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.
Memo.") (Doc. 57).  Plaintiff's Memorandum is mistakenly labeled as an opposition to Defendant's "Motion to
Dismiss."

[2] For ease of reference, when citing to Plaintiff's Memorandum, the Court will refer to the page numbers bates-
stamped on the document at the time of the filing.

Plaintiff joined HHC as a temporary employee in October 2004.  Def.'s 56.1 Stmt. ¶ 3.  In April, 2006, Plaintiff was hired for a full time position as a Senior Management Consultant.  *Id.* at ¶ 4. From 2006 to 2009, Plaintiff also worked as a Document Imaging Supervisor, responsible for, among other things, hiring and firing individuals within the department, managing projects, and overseeing additions and changes to documents on Defendant's website.  *Id.* at ¶¶ 5–6, Pl. Dep. Tr. 24:7–25.[3]  These positions were all within the Corporate Support Services ("CSS") department at HHC.  Pl. Memo. at 2; Def. 56.1 Stmt. ¶ 5.

In addition to supervising the Document Imaging department, Plaintiff claims that she also worked closely with her direct supervisor, Mr. Adrian Dandrea, who trained her to take over his position as Senior Director upon his departure.  Pl. Dep. Tr. 28:8–29:9.  However, in 2008, Mehmet Tuzuner, a white male who had previously worked as temporary consultant for HHC, was promoted to the Senior Director position.  Def. 56.1 ¶ 36.

Plaintiff contends that she filed a complaint with HHC's internal Equal Employment Office ("EEO") following Mr. Tuzuner's promotion.[4]  On October 12, 2011, HHC's EEO responded to Plaintiff's complaint finding no evidence indicating that Defendant's failure to promote Plaintiff was based on her race or gender.  Compl. at 42.[5]  On October 27, 2011,

---

[3] Citations to "Pl. Dep. Tr." refer to Plaintiff's deposition taken by Defendant on June 26, 2015 included as Exhibit B to the Declaration of David Mou in Support of Defendant's Motion for Summary Judgment ("Mou Decl.") (Doc. 49).

[4] The actual filing date of Plaintiff's internal EEO complaint is unclear.  Defendant claims that Plaintiff filed her internal complaint in 2008.  Def. 56.1 ¶ 40.  However, Defendant does not identify anything in the record to support that Plaintiff filed her complaint at that time.  Moreover, Defendant does not address why its response to Plaintiff's complaint was dated October 2011 – three years after Defendant asserts she filed it.  Compl. at 42.  In fact, in Plaintiff's Amended Complaint, she explicitly states that she filed a complaint with the internal EEO and the EEOC in 2011.  *See* Compl. at 5.  Also, when first asked at her deposition, Plaintiff asserts that she filed her complaint "the year before" her move to EITS, which took place in mid-2012.  Pl. Dep. Tr. 93:3–9.  Though Plaintiff's later statement in that same deposition that she filed her EEO complaint in "2009/2010" further confuses the issue, Pl. Dep. Tr. 136:22–137:19, it does not support a finding that Plaintiff filed her EEO complaint in 2008.

[5] As with Plaintiff's Memorandum, when referring to Plaintiff's Amended Complaint, the Court will refer to the page numbers bates-stamped on the document at the time of the filing.

Plaintiff completed a United States Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire in which she alleged employment discrimination on the basis of race, sex, and national origin and checked "Box 1" indicating that she wanted to speak with "an EEOC employee before deciding whether to file a charge."[6]  *Id.* at 66.  Plaintiff asserts that the EEOC did not pursue an investigation of her claims and instead advised her to contact the EEOC again if she suffered any adverse actions within the year.  Pl. Dep. Tr. 93:3–18.  Plaintiff alleges that employees in the HHC's HR department were aware of these filings.  Compl. at 37.

Approximately one year after Mr. Tuzuner's promotion, Plaintiff was promoted to Director of Applications & Systems Management for Telecommunications System & Application Management ("TS&AM") also within the CSS department.  *Id.* at ¶ 8.  As a director, Plaintiff was in charge of, among other things, supervising the Document Imaging and web programming departments, working on web development, project management, budgeting, and graphics.  *Id.* at ¶ 9; Pl. Dep. Tr. 33:20–34:20.  Plaintiff remained with the TS&AM team in the CSS department until HHC underwent a reorganization in late 2011.

Beginning in late 2011 and continuing through 2012, HHC reorganized and expanded its Corporate IT department to assume the IT related functions handled by the TS&AM team in CSS.  Mou Decl. Ex. A at 2.  As a result of HHC's reorganization, all TS&AM positions, including Plaintiff's and those who reported to her, were phased out of CSS:  seven full-time and six temporary consultant positions.  *Id.*  Of those, two employees –both male – were terminated and eleven were given the opportunity to interview with other HHC departments.  Def. 56.1 Stmt. ¶ 12.  Both Mr. Tuzuner and Plaintiff were given the opportunity to transfer to other

---

[6] Plaintiff contends that she "put in a claim" with the EEOC in 2011 and characterizes this claim as an EEOC "complaint" throughout her submissions.  Pl. Dep. Tr. 93:3–18.  However, the record indicates that Plaintiff filed an Intake Questionnaire with the EEOC but did not pursue a formal charge at that time.

departments.  Plaintiff was offered a position within the Enterprise Information Technology Services ("EITS") department.  Def. 56.1 Stmt. ¶ 14.  Mr. Tuzuner was offered a position with the Infrastructure group within Corporate IT.  Mou Decl. Ex. A at 7.

Before her transfer, Plaintiff attended a general meeting with HHC's Chief Information Officer, Bert Robles, to discuss employees' reactions to the reorganization.  Compl. at 28.  She claims that when Mr. Robles asked her about her experience, she expressed her dissatisfaction with her placement and requested to speak with him privately.  *Id.*  Plaintiff asserts that Mr. Robles responded defensively, demanding that she speak with her supervisors and proclaiming that he would "not be in the middle" or "be given ultimatums."  *Id.*  She had never met Mr. Robles prior to this interaction and claimed that his "unwarranted aggression" was alarming.  *Id.*

In July 2012, Plaintiff began in a document management position within EITS.  Her title, salary, and benefits remained unchanged.  Def. 56.1 Stmt. ¶ 20.  Plaintiff was assigned to report to Janet Karageozian and manage two consultants.  *Id.* at 18.  However, approximately one month later, Plaintiff was informed that due to her skillset, she would "fit best" working in the Corporate Applications team under Jeffrey Lutz, who like Plaintiff, was also a director.  *Id.* at ¶ 18; Pl. Memo. at 26.  The team consisted of twenty-five employees and included women.  Mou Decl. Ex. A at 3, 6.

Upon arrival, Plaintiff was given two major assignments.  Defendant claims that her first assignment entailed "taking on some of the responsibilities of a team member that was taking a leave of absence," which included, among other things, "maintaining and publishing weekly project updates," helping to coordinate the teams' resources, and performing training and onsite installation user support for Single Sign-On, an HHC application.  Mou Decl. Ex. A at 3.  The second assignment "involved helping with the transition of the applications from CSS to

Corporate IT." *Id.*  Plaintiff alleges that, in fact, her assignments were menial and included "secretarial/helpdesk duties."  Compl. at 6.  She claims that her first assignment entailed filling in for Mr. Lutz's administrative assistant who was about to take maternity leave, Pl. Dep. Tr. 106:18–108:11, which included tasks like deleting blank lines from spreadsheets, separating documents in Microsoft Word, and installing software for other employees.  Pl. Memo. at 3. Plaintiff also claims that the Single Sign-On project, to which she was assigned to help communicate user's needs to the programmers, was a "dead end project" because the programmers and users facilitated their own interactions and scheduled meetings without Plaintiff to address the applications.  Compl. at 31.

Three months after her transfer, Plaintiff submitted a request for Discretionary Administrative Leave to Mr. Lutz for the overtime she claimed to have accumulated over a fourteen-month period.  Mou Decl. Ex. A at 7.  Mr. Lutz denied Plaintiff's request because it included time she accumulated while at CSS.  *Id.*  Plaintiff then submitted her request to HR, which also denied her request, citing to various provisions in HHC's Operating Procedure as the basis for its decision.  *Id.*

On November 19, 2012, Plaintiff provided HR with a resignation letter stating that she had "become less and less satisfied with the work situation" and that she felt that it was "increasingly difficult" for her to contribute sufficiently.  Mou Decl. Ex. C.  Plaintiff claimed that she "was being underutilized" and felt like she was "being pushed out of [her] director's position."  Pl. Dep. Tr. 61:4–11.  Plaintiff's last day of employment at HHC was November 30, 2012.  Def. 56.1 Stmt. ¶ 24.

On December 3, 2012, Plaintiff filed a complaint with the EEOC alleging discrimination and retaliation solely on the basis of her gender.  Mou Decl. Ex. E.  The EEOC issued her a right

to sue letter on June 26, 2013.  *Id.* at 36.  Plaintiff filed her initial Complaint in this action on

July 9, 2013 and filed an Amended Complaint on January 13, 2014.  Plaintiff alleges that HHC

discriminated against her on the basis of her gender and race by (1) not promoting her in 2008,

(2) transferring her to EITS and (3) assigning her administrative tasks despite her qualifications;

and retaliated against her for filing an EEO complaint and EEOC Intake Questionnaire, all in

violation of Title VII, the SHRL, and CHRL.

## II.   Legal Standard

### A.  General Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the

evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno*

*v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint*

*Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might

"affect the outcome of the litigation under the governing law."  *Id.* (quoting *Miner v. Clinton Cty.*

*N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)).  The party moving for summary judgment is first

responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party

must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in

order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504

(S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536

F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the

light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

### B.  Special Solicitude for *Pro se* Litigants

The Second Circuit has made clear that "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."  *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)).  *Pro se* litigants' submissions are "held 'to less stringent standards than formal pleadings drafted by lawyers.'"  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y. City Dep't of Educ.*, No. 09-cv-6621 (SS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants).  Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by

*pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

###    C.  Additional Summary Judgment Standards for Employment Discrimination Cases

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); however, "[s]ummary judgment is appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to other areas of litigation."  *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)).  Indeed, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."  *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001)).  Particularly, "when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer."  *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010).

### III.   Discussion[7]

### A.  Claims Pursuant to Title VII

#### 1.   Plaintiff's Failure to Promote Claim is Time Barred

In order to file suit under Title VII, a plaintiff must first file a timely charge with the EEOC.  *See Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011).  In New York, a Title VII claim must be brought before the State Division of Human Rights ("SDHR") within 300 days of the alleged unlawful conduct in order to be considered timely.  *See* 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see also Harris v. City of New York*, 186 F.3d 243, 247 n.2 (2d Cir. 1999) (noting that "the existence of [the SDHR] makes New York a so-called deferral state for Title VII" purposes, such that the 300-day limitations period governs).  "A claim is time barred if it is not filed within these time limits."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  Here, Plaintiff filed her EEOC complaint on December 3, 2012.  Mou Decl. Ex. E.  As such, any alleged violations of Title VII that occurred prior to February 6, 2012 necessarily fall outside of the 300-day filing period.  Therefore, Plaintiff's allegation of discrimination relating to HHC's failure to promote Plaintiff to a Senior Director position in 2008 is time-barred.

Plaintiff suggests that her claim is saved by the "continuing violation doctrine."  *See* Plaintiff's December 13, 2013 Pre-Motion Conference Response Letter ("Response Letter")

---

[7] Defendant argues that because Plaintiff did not address Defendant's arguments that she failed to exhaust administrative remedies and that her claims were barred by the statute of limitations for Title VII, SHRL, and CHRL, these claims should be deemed abandoned.  *See* Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment ("Def. Reply") (Doc. 61) at 2–3.  Courts have regularly dismissed claims as abandoned where a plaintiff has failed to address them in opposing defendant's dispositive motions.  *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (collecting cases).  However, courts have been reluctant to find that *pro se* plaintiffs' claims have been abandoned, especially when the plaintiff has made attempts to respond to the defendant's arguments.  *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) (holding that when a *pro se* plaintiff makes a partial response to a motion, "the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate").  Here, although Plaintiff did not submit a formal memorandum of law, she did submit a response to Defendant's 56.1 Statement.  Accordingly, the Court will examine the entirety of the record to determine whether Defendant is entitled to summary judgment.

(Doc. 11) at 1 (arguing that "a pattern of discriminating acts by individuals within [HHC]" towards her existed). "Where a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside the limitations period." *Ruane v. Cnty. of Suffolk*, 923 F. Supp. 2d 454, 459 (E.D.N.Y. 2013) (internal quotation marks omitted). However, this doctrine does not "apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day." *Kellogg v. N.Y. State Dep't of Corr. Servs.*, No. 07-cv-2804 (BSJ), 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009). Here, Plaintiff's discrimination claim is based on Defendant's failure to promote her to the Senior Director position in 2008, a discrete act that occurred on a specific date and was not part of a longstanding practice. *See Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d Cir. 2010) (finding that plaintiff's allegations of being "denied promotions and advancements" and other retaliatory events did not constitute a "long-standing policy and practice" and therefore did not trigger the continuing violations doctrine). As such, the continuing violation doctrine cannot save Plaintiff's failure to promote claim from dismissal.

### 2. Plaintiff's Racial Discrimination Claim is Dismissed for Failure to Exhaust Administrative Remedies

"Title VII requires a plaintiff to pursue and exhaust administrative remedies before bringing suit." *Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). To fulfill the exhaustion requirement and seek relief in federal court, plaintiff must first file her charges with the EEOC. *See* 42 U.S.C. § 2000e–5(e). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). Thus, if a plaintiff does not

include a claim in its filing with the EEOC that particular claim is generally barred from review in federal court.  *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory schemes and, as such, a precondition to bringing such claims in federal court.").  Though courts have allowed plaintiffs to proceed on "reasonably related" claims not initially presented to the EEOC, *id.*, claims "based on a wholly different type of discrimination" are barred from review.  *Peterson v. Ins. Co. of N. Am.*, 884 F. Supp. 107, 109 (S.D.N.Y. 1995); *see also Acheampong v. N.Y. City Health & Hosps. Corp.*, No. 11-cv-9205 (LTS) (SN), 2015 WL 1333242, at *9–10 (S.D.N.Y. Mar. 25, 2015) (dismissing plaintiff's race, color, and national origin claims because he had indicated only discrimination based on a disability in his EEOC filings).

Here, Plaintiff's December 3, 2012 EEOC complaint asserts only two Title VII claims: (1) gender discrimination and (2) retaliation.  *See* Mou Decl. Ex. E.  Plaintiff did not check "race," "color," or "national origin" as the basis for her discrimination claims.  *Id.*  Additionally, nowhere in her EEOC filing did Plaintiff state or include her race, color, or national origin.  In fact, in the "Particulars" section of her complaint, which allows Plaintiff to provide additional information regarding her claims, Plaintiff specifically states that she believes she is "being discriminated and retaliated against due to [her] gender and for filing [her] previous EEOC complaint."  *Id.*  Plaintiff also does not include any mention of her race or color in the "Additional Information" section she included with the complaint.  *Id.*

Even taking the facts in the light most favorable to Plaintiff, her race claims are not "reasonably related" to the gender claims asserted in her complaint.  Without any mention of Plaintiff's race in her submissions, the EEOC had no basis to investigate these claims.  As such,

Plaintiff's claims based on race are procedurally barred and will be dismissed for failure to exhaust administrative remedies.

* * *

Accordingly, Plaintiff's three remaining Title VII claims are that HHC discriminated against her based on her gender by (1) transferring her to EITS and (2) assigning her materially diminished responsibilities after the reorganization; and (3) retaliated against her for filing a complaint with HHC's EEO and the Intake Questionnaire with the EEOC.

### 3. Analytical Framework for Gender Discrimination and Retaliation Claims

Plaintiff's surviving Title VII claim for gender discrimination and retaliation are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (applying *McDonnell* framework to retaliation claim).  Under the *McDonnell Douglas* framework, a plaintiff alleging discrimination under Title VII must first demonstrate a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  The Second Circuit has explained that a plaintiff's burden at this stage is *de minimus*.  *Abdu-Brisson*, 239 F.3d at 467.  Nonetheless, in order to state a *prima facie* case for discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), and "cannot meet [its] burden through reliance on unsupported assertions." *Goenaga*, 51 F.3d at 18.

If a plaintiff successfully presents a *prima facie* case of discrimination, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the

adverse employment action demonstrated in plaintiff's *prima facie* case. *Abdu-Brisson,* 239 F.3d at 468 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original). To satisfy the second step of *McDonnell Douglas*, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254. "If the defendant carries this burden of production, the presumption [of discrimination] raised by the *prima facie* case is rebutted," and "drops from the case." *Id.* at 255 n.10.

Under the third step of the *McDonnell Douglas* framework, the burden then shifts back to the plaintiff to prove intentional discrimination by a preponderance of the evidence. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121 (2d Cir. 1997). It is important to note that courts must review a plaintiff's evidence at this step "as a whole" rather than in a piecemeal fashion. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001). "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that a defendant's employment decision was more likely than not motivated in part by discrimination." *Walsh v. N.Y. City Housing Authority*, 2016 WL 3632245, at *3 (2d Cir. July 7, 2016).

### 4. Gender Discrimination

To state a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d

486, 491–92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138).  Defendant does not dispute that

Plaintiff is a member of a protected class and was qualified for her position.  Rather, Defendant

argues that Plaintiff cannot establish a *prima facie* case for discrimination because Plaintiff

cannot show that she suffered an adverse employment action or that the adverse action took

place under circumstances giving rise to an inference of discrimination.  *See* Def. Mem. at 12,

16.[8]  Plaintiff asserts that she was subject to gender discrimination when she was transferred to

EITS in connection with HHC's reorganization and asked to perform "administrative/helpdesk"

tasks despite her experience and qualifications.  *See* Response Letter at 2.

### a)  Adverse Employment Action

An adverse employment action is a "materially adverse change in the terms and

conditions of employment."  *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)

(internal quotation marks omitted).  Materially adverse change may be indicated by "a

termination of employment; a demotion with a decrease in wage or salary or a less distinguished

title; a material loss of benefits; significantly diminished material responsibilities; or other

indices unique to a particular situation."  *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429,

436 (S.D.N.Y. 2008).  Importantly, the change in working conditions must be 'more disruptive

than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (internal quotation marks

omitted).

In cases involving involuntary transfers, courts have held that such transfers can

constitute an adverse employment action if the plaintiff shows that "the transfer created a

materially significant disadvantage" with respect to the terms of her employment.  *Galabaya*,

202 at 641.  The key inquiry is "whether the transfer constitutes a negative employment action

---

[8] Citations to "Def. Mem." refer to Defendant's Memorandum of Law in support of Defendant's Motion for
Summary Judgment. (Doc. 50).

tantamount to a demotion." *Pacheco v. N.Y. Presbyterian Hosp.*, 593 F. Supp. 2d 599, 617 (S.D.N.Y. 2009). Thus, a plaintiff must proffer evidence that her assignments upon her transfer, were "materially less prestigious, materially less suited to [her] skills and expertise, or materially less conducive to career advancement." *Galabya*, 202 F.3d at 641. "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer an adverse employment action." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004).

Here, construing Plaintiff's claims liberally, she alleges three adverse employment actions:[9] (1) constructive termination; (2) transfer from CSS to EITS; and (3) a material change in work responsibilities and tasks upon her transfer.

First, the Court understands Plaintiff to assert a constructive discharge claim. A constructive discharge may constitute an adverse employment action "when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007) (internal quotation marks omitted). "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

Here, Plaintiff alleges that she was "forced" to resign "by the discriminating behavior of

---

[9] In Plaintiff's EEOC complaint (attached to her Amended Complaint), Plaintiff also alleges that she was denied administrative leave despite proffering documentation proving her entitlement to leave. Compl. at 12. This claim was not addressed in her Amended Complaint or her Response letter. Nor does the Plaintiff allege that she was denied leave on account of her race, gender, or as retaliation for filing her claims. Accordingly, the Court will not consider whether this action constitutes an adverse employment action for the purposes of Plaintiff's discrimination and retaliation claims.

HHC employees."  Response Letter at 2.  However, she provides no admissible evidence to indicate that the work environment in EITS was "so difficult or unpleasant" that a reasonable person would have felt "compelled to resign."  At her deposition, Plaintiff stated explicitly that she resigned because she "was being underutilized" and felt if she were "being pushed out of [her] director's position."  Pl. Dep. Tr. 61:4–11; *see also id.* at 90:20–91:16.  In her resignation letter, Plaintiff also made no mention of an intolerable or unbearable work environment, but rather stated that she felt that it was "increasingly difficult" for her to feel that she was "contributing sufficiently" to HHC.  Mou Decl. Ex. C.  Plaintiff's expressed dissatisfaction with her work assignments is insufficient to establish a constructive discharge claim.  *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 12 (2d Cir. 2013) (affirming District Court's finding that plaintiff's reduced responsibilities did not rise to level of a constructive discharge) (citing *Pena*, 702 F.2d at 325-26); *DeSalvo v. Volhard*, 312 F. App'x 394, 397 (2d Cir. 2009) (affirming District Court's finding that plaintiff's "dissatisfaction with work assignments," mainly her increased phone responsibilities, did not support her constructive discharge theory).

Second, Plaintiff's transfer, though involuntary, is not an adverse employment action. The record indicates, and Plaintiff admits, that HHC could have terminated instead of transferred her to another department.  *See* Pl. Dep. Tr. 89:22–24 ("Q. Is it fair to say that they could have let you go from CSS and not transfer you to the EITS? A. Yes.").  Plaintiff also concedes that her title, salary, and benefits remained unchanged upon her transfer.  Pl. Dep. Tr. 155:10–9.  Further, her disapproval of Defendant's decision to transfer her to EITS is insufficient to render the transfer, on its own, an adverse employment action.  *See Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 103 (S.D.N.Y. 2012) (holding that plaintiff's transfer as a result of defendant's

reorganization was not an adverse employment action because it was unaccompanied by any reduction of job title, salary, or benefit); *see also Johnson v. Eastchester Union Free Sch. Dist.*, 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) ("Plaintiff's mere dissatisfaction with the transfer and his preference for his former position ... are insufficient to constitute a materially adverse employment action."); *Garber v. N.Y. City Police Dep't*, No. 95-cv-2516 (JFK), 1997 WL 525396, at *7 (S.D.N.Y. Aug. 22, 1997) ("Plaintiff's dissatisfaction with the transfer, standing alone, does not support his claim of an adverse employment action.").

Plaintiff's final assertion, that the change in her responsibilities constituted an adverse employment action, is marginally more persuasive.  The record indicates that upon Plaintiff's transfer to EITS she was assigned to relatively menial administrative tasks, including covering for Mr. Lutz's administrative assistant while the assistant was on maternity leave. [10]  *See* Mou Decl. Ex. A at 3; Pl. Dep. Tr. 106:18–108:11.  Her other responsibilities included such basic tasks as deleting blank lines from spreadsheets, separating Microsoft Word documents, and helping other employees install software.  *See* Response Letter at 2.  Plaintiff was also no longer in charge of a team of consultants, a primary responsibility she had as a director in CSS.  Pl. Dep. Tr. 64:13–17.  Moreover, Plaintiff had to report to and receive assignments from Mr. Lutz, whose title mirrored hers.  Taking these facts in the light most favorable to Plaintiff, she has proffered sufficient evidence at this juncture of the analysis to show that her change in responsibilities was sufficiently material to constitute an adverse employment action.  *See Gelin v. Geithner*, No. 06-cv-10176 (KMK), 2009 WL 804144, at *14 (S.D.N.Y. Mar. 26, 2009)

---

[10] Defendant argues that Plaintiff cannot claim that she effectively held an administrative position because Plaintiff left before she filled in for the assistant on leave.  Def. Memo. at 14.  However, the fact that Plaintiff did not ultimately perform the tasks does not rebut Plaintiff's allegations that she was effectively assigned an administrative assistant position by being required to perform those tasks.  Additionally, Plaintiff testified that she had begun training for the position before the assistant went on leave.  Pl. Dep. Tr. 126:17–127:19.

(noting that plaintiff's burden at *prima facie* stage is *de minimus* and finding that changes in terms and conditions of plaintiff's employment "were arguably significant enough to qualify as materially adverse").

Accordingly, Plaintiff has shown an adverse employment with respect to her change in responsibility upon her transfer to EITS, but just barely.

### b)  Inference of Discriminatory Intent

To establish a *prima facie* case of discrimination, Plaintiff must also show that Defendant acted with discriminatory intent.  *See* Def. Memo. at 16.  Discriminatory intent may be derived in a variety of circumstances, including but not limited to, "the more favorable treatment of employees not in the protected group."  *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citation omitted).  In order to establish an inference of discrimination through the favorable treatment of employees not in the protected group, a plaintiff must show they were "similarly situated in all material respects to the individuals with whom he seeks to compare herself."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d. Cir. 2000) (internal quotation marks omitted) (quoting *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  Generic allegations of disparate treatment of an unspecified class of persons not in plaintiff's protected group are insufficient to show discriminatory intent.  *See Henry v. N.Y. City Health & Hosps. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014).

Here, Plaintiff attempts to establish an inference of discriminatory intent primarily by comparing herself to Mr. Tuzuner, a white male.  Specifically, Plaintiff asserts that Mr. Tuzuner was able to continue in his Senior Director position and manage his consultants.  *See* Pl. Dep. Tr. 95:17–96:8.  Defendant argues that Mr. Tuzuner was not "similarly situated" to Plaintiff in all material respects because he held a higher position, had different responsibilities, and was

transferred from CSS to a different department than Plaintiff.  Def. Memo. at 17.

The Court agrees with Defendant that Mr. Tuzuner is not an appropriate comparator. Plaintiff and Mr. Tuzuner did not have the same title or responsibilities.  Indeed, Mr. Tuzuner was a Senior Director and Plaintiff's supervisor.  *See* Pl. Dep. Tr. 47:3–5 (stating that Mr. Tuzuner supervised three people, including Plaintiff, and oversaw the "voiceover IP and videoconferencing activities").  Supervisors are generally not considered materially similar to supervisees.  *See Shaw v. McHugh*, No. 12-cv-6834 (CS), 2015 WL 1400069, at *9 (S.D.N.Y. Mar. 26, 2015), *aff'd*, 641 F. App'x 95 (2d Cir. 2016) (holding that plaintiff was not similarly situated to the director and supervisors to which he reported); *Hernandez v. City of New York*, No. 11-cv-3521, 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) ("Examples of what constitutes [similarly situated in] a 'material respect' are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards."); *Wood v. Sophie Davis Sch.*, No. 02-cv-7781, 2003 WL 22966288, at *6 (S.D.N.Y. Dec. 15, 2003) (holding that because plaintiff's comparators were "actually all her supervisors," comparing them was inapt).

Further, Plaintiff proffers no evidence to indicate Mr. Tuzuner actually received more favorable treatment.  Both Plaintiff and Mr. Tuzuner suffered the indignity, if such it was, of being transferred from CSS to EITS.  And while Mr. Tuzuner maintained his title, salary, and benefits, Plaintiff did also.  Although Plaintiff claims that Mr. Tuzuner was allowed to continue managing the consultants he worked with at CSS while she was not, the record indicates that the consultants Plaintiff supervised were terminated before the transfer.  *See* Pl. Dep. Tr. at 99:14–18.

Plaintiff also asserts general allegations about the different treatment of other male

colleagues.  For example, Plaintiff claimed that "men in the [CSS] department were not forced to move nor were they demoted or fired."  Compl. at 30.  However, the record establishes that all of the TS&AM employees — men and women — were forced to move or were terminated in connection with the reorganization.  Plaintiff's conclusory statements to the contrary, without more, are plainly insufficient to establish an inference of discriminatory intent.  *See Gertskis v. EEOC*, No. 11-cv-5830, 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) (finding that plaintiff's Title VII claims failed because they were "conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct") (collecting cases).  Plaintiff's claim that Mr. Lutz allowed the "men in the office" to come and go as they pleased, Compl. at 31, is unsupported by the record and equally insufficient to establish discriminatory motive.  Accordingly, Plaintiff is unable to establish a *prima facie* case of discrimination.

In sum, Plaintiff's allegations, whether considered individually or as whole, do not establish a *prima facie* case of gender discrimination.  However, even assuming Plaintiff was able to establish a *prima facie* case of discrimination, Defendant has clearly established that it had a legitimate nondiscriminatory reason for transferring Plaintiff to a new department and changing her responsibilities.

### c)  Defendant Has Offered a Non-Discriminatory Reason for Plaintiff's Transfer and Change in Responsibilities

Upon a plaintiff's *prima facie* showing of employment discrimination, the burden of production shifts to the defendant to introduce evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original).  Here, Defendant asserts, and Plaintiff acknowledges, that her transfer to EITS was part of a larger reorganization plan at HHC to "expand the Corporate IT department."  Mou Decl. Ex. A at 2, *see also* Pl. Dep. Tr. 114:1–4

(acknowledging that HHC's reorganization "involved many people and many departments"). Defendant also claims that Plaintiff was specifically transferred to document management in EITS due to her extensive background and experience in IT.  *Id.*

With respect to Plaintiff's particular assignments, Defendant proffered that Mr. Lutz believed that Plaintiff's assignments "would be a great opportunity for [Plaintiff] to interact with other members of the team and get a full awareness of what the Corporate Applications team did."  *Id.* at 3.  These assignments were "offered in order to give [Plaintiff] exposure to other teams within Corporate IT along with the possibility for leadership opportunities and project management development."  *Id.*  Additionally, the Corporate Applications team did not have an administrator and therefore "all team members performed the administrative functions" relating to their project assignments.  *Id.*

Accordingly, Defendant's clear and specific reason for Plaintiff's transfer and change in responsibilities unrelated to her gender shifts the burden back to Plaintiff to establish discriminatory intent.  *See Richardson v. Bronx Lebanon Hosp.*, No. 11-cv-9095 (KPF), 2014 WL 4386731, at *15 (S.D.N.Y. Sept. 5, 2014) (collecting cases in which the court found defendant's restructuring decision to be a legitimate non-discriminatory reason for a reduction in force and other adverse employment actions).

### d)  Plaintiff Cannot Prove Intentional Discrimination

To meet her burden and defeat a motion for summary judgment, Plaintiff must demonstrate that either "a discriminatory motive, more likely than not," motivated Defendant's adverse employment actions or that "the reasons given by the defendants are not true and that discrimination is the real reason."  *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  At this step, courts must engage in a "cumulative inquiry" of a plaintiff's proffer and not

insist that a single piece of evidence "bear the full weight of a plaintiff's burden."  *Walsh*, 2016 WL 3632245, at *5.  Here, Plaintiff alleges that Defendant's reasons for her transfer and assignments were untrue and were merely pretext for discrimination.

The Court disagrees.  Plaintiff's assertion that her gender was a motivating factor in Defendant's decision to transfer her hinges largely on her belief that her transfer was unnecessary.  Compl. at 30.  She claims that at the time of HHC's reorganization, she was primarily working with CSS's graphics department — which remained in CSS after the reorganization — and that allowing her to stay would not have upset Defendant's reorganization efforts.  *Id*. at 29.  However, Plaintiff's mere disagreement with Defendant's legitimate business decision to restructure, without more, does not prove discriminatory motive.  *See Bastian v. N.Y. City Dep't of Educ.*, No. 04-cv-7450 (PAC), 2008 WL 2930529, at *9 (S.D.N.Y. July 29, 2008) (holding that "plaintiff must do more than simply disagree with defendants' decisions" to establish discriminatory intent); *Jimoh v. Ernst & Young,* 908 F. Supp. 220, 226 (S.D.N.Y. 1995) ("As a matter of law, an employee's disagreement with an employer's business decision is insufficient to prove discriminatory conduct.").  Plaintiff's argument is further undermined by her concession that HHC's reorganization was based on its own "research and analysis" and involved "many people and many departments."  Pl. Dep. Tr. 89:10–12, 114:1–4.  In addition, she proffers no evidence that she was treated differently because she was female, nor does she attempt to establish that other female employees were similarly treated.  Accordingly, no reasonable juror would find that Defendant's decision to transfer Plaintiff was motivated by her gender.

Plaintiff's claim that she was assigned administrative tasks in EITS because she is a woman is also insufficient to establish pretext.  Though Plaintiff provides a comprehensive

explanation of how her day-to-day tasks differed from Defendant's description, Compl. at 30–31), she does not proffer any evidence to show that her gender was at least one of Defendant's motivating factors when assigning her these tasks.  In fact, Plaintiff makes no mention of the roles or treatment of the other women in the department and admits that she was given administrative tasks by other (non-identified) colleagues, not just her supervisor.  Compl. at 32.

Assessing Plaintiff's evidence as a whole, the Court finds that Plaintiff is unable to rebut Defendant's legitimate nondiscriminatory reason for her transfer and assignments.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of gender discrimination under Title VII.

### 5.   Retaliation Claim

Plaintiff alleges that she was retaliated against for filing a complaint with HHC's EEO and an Intake Questionnaire with the EEOC.  Plaintiff's retaliation claims under Title VII are also governed by the *McDonnell Douglas* burden-shifting framework.  *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  To establish a *prima facie* case of retaliation under Title VII, an employee must show that (1) she was engaged in a protected activity; (2) the defendant was aware of the protected activity; (3) she suffered a materially adverse action; and (4) there is a causal connection between her protected activity and the materially adverse action.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).

### a)   Protected Activity

The parties do not dispute that both Plaintiff's complaint with HHC's internal EEO and Plaintiff's filing of an EEOC Intake Questionnaire constitute protected activities.  *See, e.g.*, *Hiralall v. Sentosacare, LLC*, No. 13-cv-4437, 2016 WL 1126530, at *12 (S.D.N.Y. Mar. 18, 2016) ("Plaintiff's . . . EEOC intake questionnaire alleging racial and national origin

23

discrimination constitutes protected activity sufficient to demonstrate the first prong of a *prima facie* case."); *see also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (finding that protected activity may also include "informal protests of discriminatory employment practices, including making complaints to management").

### b) Employer's Knowledge

Plaintiff can also show that Defendant had knowledge of her internal EEO complaint.  To satisfy this requirement, a plaintiff is not required to show that the individual decision-makers had knowledge of her protected activity; it is sufficient if the corporate entity has been put on notice of plaintiff's complaint of conduct violating Title VII.  *Gordon*, 232 F.3d at 116.  Plaintiff filed her discrimination complaint with HHC's internal EEO, by way of its HR department.  As such, Defendant was necessarily put on notice.  *See Alston v. N.Y. City Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) (holding that filing and maintenance of internal EEO complaint put employer on notice of protected activity).

The same cannot be said of Plaintiff's filing of the EEOC Intake Questionnaire in October 2011.  Defendant specifically disclaims any knowledge of the filing and nothing in the record indicates that Defendant had any knowledge of her contact with the EEOC in 2011.  First, the Intake Questionnaire explicitly provides that by checking Box 1 — which Plaintiff checked — the employee would not be alerting her employer.  *See* Compl. at 66.  Second, the EEOC did not pursue an investigation of Plaintiff's assertions, which plainly would have alerted Defendant to Plaintiff's charges.  *See* Pl. Dep. Tr. 93:3–18.  Lastly, Plaintiff's conclusory statements that an HR employee knew about her filings and shared this information with her supervisors are insufficient to show that Defendant was aware of Plaintiff's filing.  *See Fincher v. Depository Trust & Clearing Corp.*, No. 06-cv-9959 (WP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17,

2008) ("A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge," is insufficient to defeat a motion for summary judgment).

Accordingly, Plaintiff has met her burden of establishing Defendant's knowledge only with respect to her internal EEO complaint.

### c)  Adverse Employment Action

In order to satisfy the third element of a retaliation claim, Plaintiff must show that she suffered a materially adverse employment action.  Actions are "materially adverse" if "the employer's actions [are] ... harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) (internal quotation marks omitted).  As discussed previously, the Court finds that Plaintiff has met her burden of showing an adverse employment action with respect to the material change in her responsibilities.  However on the record here, no reasonable juror could find that Plaintiff's transfer and diminished responsibilities could dissuade a reasonable worker from making or supporting a charge of discrimination.  *See, e.g.*, *Richards-Byers v. New York City Dep't of Fin.*, No. 05-cv-8486 (GBD), 2010 WL 2834893, at *6 (S.D.N.Y. July 7, 2010) (holding that plaintiff's transfer in which she suffered no material loss in benefits but experienced a change in job assignments did not constitute an adverse action that would dissuade a reasonable person in plaintiff's position from filing a charge of discrimination).

Accordingly, Plaintiff is unable to establish a *prima facie* case of retaliation.

### d)  Causation

Even assuming that Plaintiff was able to show that she suffered an adverse employment action, Plaintiff's retaliation claim would still fail because she is unable to establish a causal connection between her transfer and reduction of responsibilities and her filing of the internal

EEO complaint.  "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation . . . .  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  A plaintiff may establish the causal connection requirement either directly, by offering evidence of retaliatory animus, or indirectly, by demonstrating that the protected activity was followed in close proximity by the adverse treatment. [11]  *Sumner*, 899 F.2d at 209.  Where a "plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'"  *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

While the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001), "[d]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *see also Petyan v. New York City Law Dept.*, No. 14-cv-1434 (GBD) (JLC), 2015 WL 1855961, at *14 (S.D.N.Y. Apr. 23, 2015) ("A ten-month interval [between filing the EEO complaint and the adverse action] is simply too attenuated to give rise to an inference of

---

[11] Construing Plaintiff's response liberally, the Court understands Plaintiff to claim that retaliatory animus can be shown by Mr. Robles's remarks at the meeting Plaintiff attended prior to her transfer.  *See* Compl. at 28.  However inappropriate Plaintiff believes Mr. Robles' response to her may have been, this stray remark — in which her protected activity was not even mentioned or suggested — is insufficient to infer retaliatory intent.  *See Alexander v. Bd. of Educ. of City Sch. Dist. of City of New York*, 107 F. Supp. 3d 323, 330 (S.D.N.Y. 2015) ("[I]solated and stray remarks, without more, are insufficient to raise an inference of retaliation.").

causation."). Where a causal connection is found based on time periods greater than three months, the delay is usually explained by unusual circumstances. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (finding an eight month delay between plaintiff filing an EEOC complaint and the adverse action was explained by plaintiff's binding eight month job assignment given to him prior to defendant receiving notice of the complaint).

Here, Plaintiff relies largely on the fact that she suffered adverse employment actions "within a year" of her first complaint. *See* Response Letter at 2. Assuming that Plaintiff filed her internal complaint in October 2011 as she asserts,[12] at least nine months elapsed between the filing and her transfer. Given the passage of time between filing the complaint and the transfer, no discriminatory intent can be inferred. Accordingly, Plaintiff is also unable to establish a *prima face* case of retaliation.

Moreover, even assuming Plaintiff can make out a *prima facie* case of retaliation, summary judgment for Defendant would still be appropriate because Defendant has presented legitimate non-retaliatory reasons for the materially adverse employment actions. *See Singleton v. Mukasey*, No. 06-cv-6588, 2008 WL 2512474, at *6 (S.D.N.Y. June 13, 2008) (dismissing retaliation claim on summary judgment where defendant presented legitimate reasons for the adverse actions, and plaintiff failed to show that those explanations were pretext).

As the Court discussed previously, Defendant transferred Plaintiff's entire department as part of a larger plan to reorganize HHC's Corporate IT. Plaintiff's transfer to EITS, which Defendant was not required to facilitate, was based on her skillset and experience in IT. Further, Mr. Lutz assigned Plaintiff tasks he felt would better integrate Plaintiff with the EITS team and

---

[12] Defendant argues that Plaintiff's internal EEO complaint was filed in 2008 — at the time of Mr. Tuzuner's promotion and at least three years before Plaintiff's July 2012 transfer to EITS. *See* footnote 4, *supra*. Because a causal connection cannot be established even using Plaintiff's timeline, the Court need not resolve this factual dispute.

the subdivision's process.  Other than Plaintiff's own conclusory statements, the record is devoid of evidence suggesting that Defendant acted with an improper motive.  Based on this evidence, no reasonable jury could find that Defendant's proffered reasons were pretextual and that retaliation was a "but-for cause" of Plaintiff's termination.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's retaliation claim under Title VII is GRANTED.

### B.  Plaintiff's State and City Law Claims Are Dismissed.

Defendant has also moved for summary judgment on Plaintiff's state and city law claims. Where, as here, all federal law claims are eliminated before trial, the "traditional 'values of judicial economy, convenience, fairness, and comity' " weigh in favor of declining to exercise supplemental jurisdiction over any remaining state and city law claims. *Kolari v. N. Y.- Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).  Having dismissed Plaintiff's sole federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state and city law claims. 28 U.S.C. § 1367(c) (3). Thus, they are likewise DISMISSED.

## IV.   Conclusion

For the reasons set forth above, Defendant's motion for judgment on the pleadings is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 47, mail a copy of this Opinion and Order to Plaintiff, and close the case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).


It is SO ORDERED.


Dated:      September 20, 2016
            New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.